UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-14255-CIV-ALTONAGA

**RAMEL WALTERS**,

    Plaintiff,
v.

**M. SHELDON**, *et al.*

    Defendants.
_____/

**ORDER**

**THIS CAUSE** came before the Court upon Plaintiff, Ramel Walters's Complaint Under the Civil Rights Act, 42 U.S.C. [Section] 1983 [ECF No. 1] and Application to Proceed in District Court Without Prepaying Fees or Costs [ECF No. 3], both docketed on August 21, 2023. Because Plaintiff is a *pro se* litigant who has not paid the required filing fee, the screening provisions of 28 U.S.C. section 1915(e) apply. Under that statute, the Court shall dismiss a suit "at any time if [it] determines that . . . (B) the action or appeal . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2) (alterations added). Upon initial screening, the Court finds Plaintiff's Complaint should be dismissed and the Application denied as legally deficient.

**I. BACKGROUND**

Plaintiff is a prisoner incarcerated at the Florida State Prison in Raiford, Florida. (*See* Compl. 2, 4).[1] On August 21, 2023, he filed his Complaint asserting a claim for damages under

---

[1] While Plaintiff is currently detained outside this District, "[a]ll [the alleged] events occurred while [he] was in solitary confinement pending transfer between Jan[uary] 27, 2023 and July 25, 2023 at Martin Correctional Institution." (Compl. 6 (alterations added)).

42 U.S.C. section 1983 for violations of his Eighth and Fourteenth Amendment rights against (1) M. Sheldon, Aramark Food Director at Martin Correctional Institution ("MCI"); (2) J. Holtz, Assistant Warden of MCI; and (3) MCI Captain K. Wenrich. (*See id.* 2–3).

Plaintiff alleges that while he was a convicted prisoner at MCI, "[f]or approximately [six] months[,] [he] was intentionally deprived [of] required and sufficient [vegan] meals." (*Id.* 5 (alterations added)). Plaintiff "participated in the vegan pattern meal diet due to religious beliefs." (*Id.*, Ex. 1, Attachment [ECF No. 1-1] 1).[2] According to Plaintiff, "[o]n numerous days[,] no [food] tray was provided," or "when the wrong diet was sent it was never replaced with [the] correct diet." (*Id.* (alterations added)). "Ar[a]mark workers at [MCI]" allegedly "created a blanket policy that all but discontinued carbohydrates from the breakfast meal for vegan pattern diet trays without replacing it [sic] with a substitute." (*Id.* (alterations added)).

Holtz allegedly advised Plaintiff to show his deficient trays to the food servers, and Plaintiff did so daily; after "approximately [three] week[s][,]" Plaintiff "initiated a routine grievance process[.]" (*Id.* (alterations added)). Sheldon responded to a grievance with the weight and food group specifications that were supposed to be served. (*See id.*). Plaintiff stated that the meals he was receiving "were inconsistent" with what the master menu proscribed, and he received "inconsistent answers" from third-party food service workers "L. Molinski and R. Smith[.]" (*Id.* (alteration added)). He filed another grievance based on these inconsistent answers. (*See id.*).

Plaintiff further alleges that, after a senior corrections officer "confirmed [his] trays were in fact well under portioned [sic]," Plaintiff advised other officers that he was "including their name[s] in [his] grievances." (*Id.* 2 (alterations added)). At this point, Captain Wenrich allegedly "began to intentionally deprive [Plaintiff] of [his] procedural due process right to grieve [his]

---

[2] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

underportioned [sic] meals and create fictious [sic] stories." (*Id.* (alterations added)). He further alleges his "grievances started disappearing, evidentiary documents were detached [preventing] the grievance bureau from adjudicating the matter[,] . . . log [numbers] were changed on several occasions[,]" and his "grievances [were] held [past] experiation [sic]." (*Id.* (alterations added)). He attaches several documents to his Complaint that he claims demonstrate "exhaustion of remedies at the highest level." (*Id.* 4–24; *see also generally* Compl., Exs. 2–3, Inmate Grievances [ECF Nos. 2–3]).[3]

Plaintiff asserts the deprivation of proper meals caused his high blood pressure to return "due to stress and malnutrition[;]" he "was placed back on high blood pressure medication" and "lost over 26 [pounds.]" (Compl. 5 (alterations added)). For his injuries, Plaintiff seeks $250,000 in "punitive" damages from each Defendant and policy changes "to ensure the adherence of [sic] the master menu." (*Id.*).

To summarize, as to each Defendant, Plaintiff makes the following allegations:

**M. Sheldon.** Sheldon allegedly used his "supervisory position to manipulate the master . . . menu." (*Id.* 4 (alteration added)). Sheldon was also allegedly involved with responding to the grievances Plaintiff filed and obstructing his access to the grievance process. (*See* Attachment 2).

**J. Holtz.** Holtz, the assistant warden of MCI, is Sheldon's direct supervisor. (*See id.* 1). According to Plaintiff, Holtz "was made aware of Ar[a]mark[']s service of insufficient meals and

---

[3] The Prison Litigation Reform Act of 1995 ("PLRA") requires a prisoner suing "under section 1983" to exhaust all available administrative remedies. 42 U.S.C. § 1997e(a). The failure to exhaust administrative remedies is an affirmative defense, but if it "appears on the face of the complaint" then "the plaintiff has failed to state a claim" and courts can dismiss on that basis. *Wells v. Brown*, 58 F.4th 1347, 1357 (11th Cir. 2023) (footnote omitted). Because the Court dismisses the Complaint for other reasons, the Court does not reach the exhaustion issue. At this time, the Court sees no reason to question Plaintiff's allegation —which appears to be supported by his over 50 pages of filed grievances — that he has "exhaust[ed his] remedies at the highest level." (Attachment 4 (alteration added); *see also generally* Inmate Grievances).

used his supervisory position to circumvent and deny Plaintiff[']s grievances." (*Id.* (alterations added)).

**Captain K. Wenrich.** Captain Wenrich was allegedly the shift supervisor who provided insufficient meals for the vegan pattern diet. (*See id.*). Captain Wenrich allegedly "used his supervisory position" to obstruct Plaintiff's access to the grievance process. (*Id.*).

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim" showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). "A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." *Id.* 10(b). Moreover, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]o state a plausible claim for relief, the plaintiff[] must plead 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1268 (11th Cir. 2009) (alterations added; quoting *Iqbal*, 556 U.S. at 678).

Admittedly, courts must "construe *pro se* pleadings liberally, holding them to a less stringent standard than those drafted by attorneys." *Arrington v. Green*, 757 F. App'x 796, 797 (11th Cir. 2018) (citation omitted). Still, a *pro se* party must abide by Rule 8(a)(2)'s requirement of a "short and plain statement of the claim" showing the pleader is entitled to relief. *Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021) (quoting Fed. R. Civ. P. 8(a)(2)).

Shotgun pleadings are not allowed — even from *pro se* plaintiffs. There are four types of shotgun pleadings that violate Rules 8(a), 10(b), or both:

> The most common type — by a long shot — is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type . . . is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

*Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321–23 (11th Cir. 2015) (alteration added; footnote call numbers omitted). The "unifying characteristic" of shotgun pleadings is that they "fail . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323 (alteration added; footnote call number omitted).

### III.  DISCUSSION

The Complaint suffers from several deficiencies that compel its dismissal. The Complaint is a shotgun pleading that fails to comply with Federal Rules of Civil Procedure 8(a)(2) and 10(b). Further, Plaintiff fails to allege sufficient facts to state claims against any Defendant. Finally, Plaintiff has not paid the filing fee or submitted a sufficient application to proceed *in forma pauperis*. Each deficiency is addressed below.

#### A.  Shotgun Pleading

The Complaint is a shotgun pleading that fails to comply with Rules 8(a)(2) and 10(b). First, the Complaint is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action" that make it difficult for Defendants — and the Court — to discern the full nature of Plaintiff's claims. *Weiland*, 792 F.3d at 1322 (alteration added; footnote call number omitted); (*see generally* Compl.). For instance, Plaintiff names two individuals, L. Molinski and R. Smith, who responded to his grievances, but it is unclear from the

Complaint how their conduct has any bearing on the claims brought against the named Defendants. (*See* Attachment 1–2).

As another example, Plaintiff makes the conclusory allegation that Captain Wenrich used "his supervisory authority to deprive Plaintiff of his procedural due process right to seek remedy through the grievance process[,]" but does not explain how Captain Wenrich did so. (*Id.* at 2 (alteration added)). Plaintiff's allegations about alleged procedural issues Plaintiff encountered during the grievance process are unconnected to any Defendant or claim for relief. (*See e.g.*, *id.* ("grievances started disappearing, evidentiary documents were detached . . ." (alteration added)). Indeed, the Complaint is replete with allegations that are unconnected to any Defendant or the purported section 1983 claims. (*See, e.g.*, *id.* 1–2 (referring to various prison officials and unnamed food service workers who were purportedly responsible for the deficient food trays)).

Second, the Complaint fails to separate into distinct counts each cause of action Plaintiff intends to assert and "assert[s] multiple claims against multiple defendants" without specifying which claims apply to each. *Weiland*, 792 F.3d at 1323 (alteration added); *see also* Fed. R. Civ. P. 10(b); (*see generally* Compl.; Attachment). Plaintiff does not distinguish between the factual allegations that apply to his Eighth Amendment and Fourteenth Amendment claims and which Defendants each of those claims are asserted against. (*See generally* Compl; Attachment). In sum, the Complaint is a shotgun pleading that "fail[s] . . . to give [] [D]efendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1323 (alterations added; footnote call number omitted).

    **B.**    <u>**Failure to State a Claim for Relief**</u>

Plaintiff also fails to plausibly allege a claim on which the Court can grant relief. *See Lee v. Eleventh Jud. Cir. of Fla.*, 699 F. App'x 897 (11th Cir. 2017) ("[D]istrict courts are required to

screen civil complaints filed by prisoners against governmental entities or employees[] and dismiss any portion . . . [that] fails to state a claim" (alterations added; citing 28 U.S.C. § 1915)).

Reading the Complaint generously, the Court construes it as attempting to state section 1983 claims for violating the Eighth and Fourteenth Amendments. (*See* Compl. 3). Because the Complaint contains generalized allegations as to each Defendant's involvement with the purported failure to provide adequate food, the Court assumes Plaintiff intended to bring his Eighth Amendment deliberate indifference claim against all Defendants. (*See generally* Compl.; Attachment).[4] The same is true for the allegations concerning Defendants' interference with the grievance process, which presumably support his claims that Defendants deprived him of his procedural due process rights in violation of the Fourteenth Amendment. (*See* Attachment 3).

### 1. *Eighth Amendment Deliberate Indifference Claim*

To successfully plead an Eighth Amendment deliberate indifference claim, a plaintiff must allege facts that meet both an objective and a subjective standard.[5] *See, e.g.*, *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (addressing the standard for proving an Eighth Amendment

---

[4] Section 1983 is not self-executing; meaning that the statute itself creates no substantive rights. *See McKinnis v. Mosely*, 693 F.2d 1054, 1057 (11th Cir. 1982). Rather, to sustain a section 1983 action, a plaintiff must make a *prima facie* showing that the act or omission of a person acting under color of state law deprived plaintiff of a right, privilege, or immunity secured by the Constitution or the laws of the United States. *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981). Put another way, "[t]he threshold question in evaluating the sufficiency of a section 1983 claim is whether any federal or constitutional issue was involved." *McKinnis*, 693 F.2d at 1058 (alteration added).

[5] Plaintiff does not specify whether he was an "arrestee[,]" "pretrial detainee[,]" or "convicted prisoner" during his detention at MCI. *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) (alterations added). The constitutional provision that would apply to his allegations depends on his status at the time of the alleged events. *See id.* For claims involving deprivation of needs, the distinction does not matter. "Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners." *Id.* (citations omitted). In the Eleventh Circuit, "the applicable standard is the same, so decisional law involving [convicted prisoners] applies equally to cases involving arrestees or pretrial detainees." *Id.* (alteration added; citations omitted). Based on the Complaint's allegations, the Court assumes Plaintiff was a convicted prisoner. (*See* Compl. 4).

7

claim on the merits). In an imprisonment context, when the "punishment" at issue is alleged to be abusive conditions of confinement, the objective standard looks to whether those conditions were severe enough to rise to cruel and unusual punishment. *Id.* As to the subjective standard, a plaintiff must allege facts demonstrating that an official acted with deliberate indifference, meaning that "the official kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Id.* at 1289–90 (alterations added; quotation marks and citation omitted). Plaintiff fails to plausibly allege facts that would satisfy these standards.

Taking the objective standard first, the Eighth Amendment requires prison officials to provide inmates with necessities, such as "adequate food[.]" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (alteration added; citations omitted). Only "extreme deprivations" of those basic necessities constitute Eighth Amendment violations. *Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992) (citation omitted). "A well-balanced meal, containing sufficient nutritional value to preserve health, is all that is required." *Smith v. Sullivan*, 553 F.2d 373, 380 (5th Cir. 1977).

Here, the prison provided Plaintiff with regular meals, but Plaintiff refused to eat certain components of the meal that did not fall under his religiously mandated vegan pattern diet. (*See* Attachments 1–3). "Neither [the Eleventh Circuit] nor the Supreme Court [has] ever held that the Eighth Amendment requires prison officials to indulge inmates' dietary preferences — regardless of whether those preferences are dictated by religious, as opposed to non-religious, reasons." *Robbins v. Robertson*, 782 F. App'x 794, 805 (11th Cir. 2019) (alterations added; citations and footnote call number omitted); *see also LaFevers v. Saffle*, 936 F.2d 1117, 1120 (10th Cir. 1991) (holding that "the mere denial of a [Seventh Day Adventist's] requested vegetarian diet is insufficient to establish a cognizable Eighth Amendment claim" because the inmate was not

entitled "to obtain the diet of his choice" (alteration added; quotation marks and citation omitted)). As such, Plaintiff fails to plausibly allege facts to satisfy the objective standard of this inquiry.

Plaintiff also fails to plausibly allege facts to satisfy the subjective standard. "To make out the subjective component of an Eighth Amendment deliberate-indifference claim, a plaintiff must establish that the defendant (1) had subjective knowledge of a risk of serious harm, (2) disregarded that risk, and (3) acted with more than gross negligence." *Wade v. McDade*, 67 F.4th 1363, 1374 (11th Cir. 2023) (emphasis omitted). While Plaintiff plausibly alleges that Defendants had knowledge of his preference for a vegan pattern diet (*see* Compl. 5; Attachment 1–3), he fails to allege sufficient facts that would allow the Court to infer that any of Defendants' conduct was "more than gross negligence." *Wade*, 67 F.4th at 1374.

Plaintiff does not allege any facts that would suggest he was at "risk of serious harm," let alone that Defendants disregarded such a risk. *Id.* He merely alleges that he lost weight and was placed back on blood pressure medication, but he does not explain why either posed a risk of serious harm or that Defendants knew of the risk of such harm. (*See* Compl. 5). He even admits that Defendants took some action to help him remedy the alleged issues with his food. (*See, e.g.*, Attachment 1 (stating that Holtz advised Plaintiff to show his deficient food trays to the food servers, and Sheldon responded to a grievance with "the specific food group and weight of the portions to be served")). Consequently, Plaintiff fails to state a claim of deliberate indifference.

### 2. *Fourteenth Amendment Due Process Claim*

The Court also presumes Plaintiff intends to state a claim against Defendants for interference with his "procedural due process right" to file grievances (Attachment 1–3); this claim is plainly meritless. It is well-settled that "an inmate has no constitutionally-protected liberty interest in access" to a prison grievance procedure. *Bingham v. Thomas*, 654 F.3d 1171, 1177

(11th Cir. 2011) (citations omitted). As such, Plaintiff fails to state a Fourteenth Amendment due process claim against any Defendant.[6]

### C. Legally Insufficient Application

Finally, Plaintiff's Application is legally insufficient. "A prisoner who seeks to proceed [*in forma pauperis*] must comply with the requirements of 28 U.S.C. [section] 1915(a)." *Bourassa v. Dozier*, 832 F. App'x 595, 597 (11th Cir. 2020) (alterations added). Under section 1915(a), a plaintiff must "submit a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint[.]" 28 U.S.C. § 1915(a)(2) (alteration added). Plaintiff has failed to do so. (*See generally* Appl.).

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Plaintiff's Complaint Under the Civil Rights Act, 42 U.S.C. [Section] 1983 **[ECF No. 1]** is **DISMISSED** without prejudice, and his Application to Proceed in District Court Without Prepaying Fees or Costs **[ECF No. 3]** is **DENIED**. The Clerk is directed to **CLOSE** the case.

**DONE AND ORDERED** in Miami, Florida, this 1st day of September, 2023.

*[signature: Cecilia M. Altonaga]*
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

---

[6] It is possible Plaintiff also intends to state a Fourteenth Amendment conspiracy claim based on Sheldon and Holtz's alleged "collusion" to obstruct Plaintiff's access to the prison grievance process. (Attachment 2). This claim also fails because Plaintiff fails to plausibly allege his Fourteenth Amendment procedural due process claim — the claim on which the alleged conspiracy rests. *See Wilk v. St. Lucie Cnty. Fla. Sheriff Off.*, 740 F. App'x 658, 663 (11th Cir. 2018). Additionally, such a claim would likely be barred by the intracorporate conspiracy doctrine. *See Detris v. Coats*, 523 F. App'x 612, 615 (11th Cir. 2013).